UNITED STATES DISTRICT COURT

BROWNSVILLE, TEXAS

United States District Court
Southern District of Texas
FILED

SEP 16 2004

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ] | No. 04-cv-0153 |
| | ] | |
| v. | ] | ( NO. 98-CR-415) |
| | ] | |
| JOHNIE WISE | ] | |

DEMAND FOR IMMEDIATE RELEASE BECAUSE

**BLAKELY** AND **APPRENDI** ARE RETROACTIVE UNDER **TEAGUE**

This Court should err on the side of caution and (1) grant immediate release, then (2) grant a sentence reduction, and then (3) grant the 2255 Motion for the reasons stated in the Petition.

Johnie Wise, Defendant, hereby DEMANDS the immediate release above mentioned, and in support would show the court the following:

I.

The Supreme Court has granted certiorari on the questions of whether BLAKELY v. WASHINGTON, 124 S.Ct. 2531 (2004), affects the United States Sentencing Guidelines. UNITED STATES v. BOOKER, 204 WL 1627259 (U.S., July 21, 2004).

MOONEY and PIRANI have both been vacated on grant of rehearing en banc on the Eighth Circuit's own motion, as well there have most assuredly been cases in the Fifth Circuit, but I do not have any current information on those cases, as the FCI-Texarkana Law Library is severely lacking in current research tools.

Just because cases have been vacated does not mean that they are still not persuasive because they are consistent with the vast majority of post-BLAKELY Guidelines cases.

II.

**UNDER <u>TYLER v. CAIN</u>, <u>APPRENDI'S</u> AND <u>BLAKELY'S</u> RETROACTIVE APPLICATION IS COMPELLED BECAUSE, AS A MATTER OF PURELY DEDUCTIVE LOGIC, THE SUPREME COURT'S DECISIONS IN <u>SHCRIRO</u> AND <u>WINSHIP</u> PLACE THE <u>APPRENDI</u> AND <u>BLAKELY</u> RULES WITHIN THE SECOND <u>TEAGUE v. LANE</u> EXCEPTION.**

In <u>TYLER v. CAIN</u>, 533 U.S. 656 (2001), the Supreme Court held a new rule of criminal procedure may be made retroactive through a series of that Court's cases:

> Justice BREYER observes that this Court can make a rule retroactive over the course of two cases. We do not disagree that, with the right combination of holdings, the Court could do this.... Multiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule.

<u>TYLER</u>, 533 U.S. at 666(internal quotations ommitted. As the majority noted, all the Justices agreed that deductive logic controlled. Justice Breyer explained:

> The matter is one of logic. If Case One hold that all men are mortal and Case Two holds that Docrates is a man, we do not need Case Three to hold that Socrates is mortal.

<u>TYLER</u>, 533 U.S. at 672-73 (Breyer, J., dissenting). In her concurrence, Justice O'Connor wrote to further explain that the Court may "'ma[k]e' a new rule retroactive through multiple holdings that logically dictate the retroactivity of the new rule." Id, at 668-69 (O'Connor, J., concurring); id, at 667 (Court's opinion disagreeing with dissent's analysis and that finding of structural error "does not logically dictate the conclusion that the second <u>TEAGUE</u> exception has been met").

Logic compels the retroactive application of <u>APPRENDI v. NEW JERSEY</u>, 530 U.S. 466 (2000), given the Supreme Court's declar-

ation of the second TEAGUE exception and its recognition, in SCHRIRO v. SUMMERLIN, 124 S.Ct. 2519 (2004), that the APPRENDI rule implicates fundamental fairness, and, in the host of earlier Supreme Court decisions, of the heightened accuracy achieved under the criminal law's standard of proof beyond a reasonable doubt. Indeed, Justice O'Connor's dissent in BLAKELY v. WASHINGTON, 124 S.Ct. 2531, 2549-50 & n. 1 (2004)(O'Connor, J., dissenting) recognizes that every federal sentence since APPRENDI is in doubt under TEAGUE.

> A. TEAGUE Mandates That Newly Recognized Constitutional Rules of Criminal Procedure Be Applied Retroactivily Where The Rule Both: (1) Implicates The Fundamental Fairness Of The Proceeding; And (2) Heightens The Accuracy Or Reliability Of The Outcome.

In the plurality decision in TEAGUE v. LANE, 489 U.S. 288 (1989), the Supreme Court announced that new procedural rules of constitutional law would generally not be applied retroactively to cases on collateral review. That decision has since been adopted by a majority of the Supreme Court. See, e.g., PENRY v. LYNAUGH, 492 U.S. 302 (1989)(abrogated on other grounds by ATKINS v. VIRGINIA, 536 U.S. 304 (2002). TEAGUE and its progeny recognize two exceptions to the general principle that new rules not apply retroactively.

The second exception, the one applicable here, the first exception, not implicated here, is for "rules that place an entire category of primary conduct beyond the reach of the criminal law," SAWYER v. SMITH, 497 U.S. 227 (1990)(citing TEAGUE, 489 U.S. at 311, requires that a new rule be applied retroactively for "those procedures that are implicit in the concept of ordered

liberty." TEAGUE, 489 U.S. at 311 (internal citations omitted). As the Court explained, such rules further two discreet values: the fundamental fairness of the underlying proceeding; and the accuracy of that underlying criminal proceeding. SAFFLE v. PARKS, 494 U.S. 484, 495 (1990). The TEAGUE court explained that it was adapting a rule previously proposed by Justice Harlan: "We believe it desirable to combine the element of DESIST v. UNITED STATES, 394 U.S. 244, 256-69 (1969)(Harlan, J., dissenting) version of the second exception with the MACKEY v. UNITED STATES, 401 U.S. 667, 675-702 (1971)(Harlan, J., concurring), requirement that the procedure at issue must implicate fundamental fairness." TEAGUE, 489 U.S. at 312; see also id. at 302-13 (discussing Justice Harlan's views in detail).

In O'DELL v. NETHERLAND, 521 U.S. 151, 156-57 (1997), the Court explained TEAGUE as follows:

> The TEAGUE inquiry is conducted in three steps. First the date on which the defendant's conviction became final is determined. LAMBRIX v. SINGLETARY, 520 U.S. 518, 527 (1997). Next, the habeas court considers whether "'a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution.'" Ibid. (quoting SAFFLE v. PARKS, 494 U.S. 484, 488 (1990)(alterations in LAMBRIX). If not, then the rule is new. If the rule is determined to be new, the final step in the TEAGUE analysis requires the court to determine whether the rule nonetheless falls within one of the two narrow exceptions to the TEAGUE doctrine, 520 U.S., at 527. The first, limited exception is for new rules "forbidding criminal punishment of certain primary conduct [and] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." PENRY v. LYNAUGH, 492 U.S. 302, 330 (1989). The second, even more circumscribed, exception permits retroactive application of "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." GRAHAM, supra, at 478 (quoting TEAGUE, supra, at 311)(internal quotation marks omitted). "Whatever the precise scope of this [second] exception, it is clearly

meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty." GRAHAM, supra, at 478(internal quotation marks omitted).

Accord: LAMBRIX v. SINGLETARY, 520 U.S. 518, 525 (1997):

> In TEAGUE we held that, in general, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S., at 310. To apply TEAGUE, a federal court engages in a three-step process. First, it determines the date upon which the defendant's conviction became final. See CASPARI v. BOHLEN, 510 U.S., at 390. Second, it must "'[s]urve[y] the legal landscape as it then existed,' GRAHAM v. COLLINS, [506 U.S. 461, 468 (1993)], and determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution,' SAFFLE v. PARKS, 494 U.S. 484, 488 (1990)." Ibid. Finally, if the court determines that the habeas petitioner seeks the benefit of a new rule, the court must consider whether the relief sought falls within one of the two narrow exceptions to nonretroactivity. See GILMORE v. TAYLOR, 508 U.S., at 345.

Two post-BLAKELY case have held that BLAKELY was "nothing less than a sea change" in federal sentencing, and the Guidelines were unconstitutional. UNITED STATES v. MUEFFLEMAN, 204 WL 1672320 (D.Mass., July 26, 2004)(Gertner, D.J.); UNITED STATES v. AMELINE, 376 F.3d 967, 973 n.2 (CA9.2004)("This sea change is evidenced by BLAKELY'S immediate impact on Guideline sentencing throughout the federal system."). Justice O'Connor has conceded as much in a speech after BLAKELY. Lyle Denniston, "Justices Agree to Consider Sentencing," NEW YORK TIMES A 14 (August 3, 2004)

TEAGUE'S second exception reduces to the simple logic argument:

If A (fundamental fairness) and B (accuracy enhancing),

then C (retroactive application of the rule).

B. In SCHRIRO, the Supreme Court Recognized That The APPRENDI Rule Satisfies TEAGUE'S Fundamental Fairness Prong.

-5-

In SCHRIRO v. SUMMERLIN, 124 S.Ct. 2519, 2524-26 (2004), a five-justice majority concluded that the decision in RING v. ARIZONA, 536 U.S. 610 (2002), applying APPRENDI to Arizona's capital sentencing scheme, does not apply retroactively under TEAGUE. The Court began by reiterating TEAGUE'S second exceptions for rules "implicating the fundamental fairness and accuracy of the criminal proceeding." SCHRIRO, 124 S.Ct. at 2523. The Court proceeded to parse these requirements: "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is **seriously** diminished.'" Id. (quoting TEAGUE, 489 U.S. at 313) (emphasis in original)). The Court went on to examine and reject this Court's conclusion that RING fell within the second TEAGUE exception, concluding that judicial fact-finding under a reasonable doubt standard had not been shown to "seriously diminish" the accuracy of the sentencing. Id. at 2524-26.

The SCHRIRO majority's analysis of the second TEAGUE exception began with its acknowledgment that the rule at issue was "fundamental", id. at 2524-26. In the end, the Court reiterated that the "right to a jury trial is fundamental to our system of criminal procedure," but held that the RING rule should not apply retroactively because it does not seriously enhance accuracy. Id. at 2526.

The four dissenting justices disagreed, noting various reasons why jury findings are superior. Id. at 2528-31(Breyer, J., dissenting). The dissent began its analysis by explicitly noting that all of the justices agreed that "RING meets the first [TEAGUE] criterion," in that it implicates fundamental fairness. Id. at 2527.

It was only on the second prong that the justices disagree. Id.

Returning to the TEAGUE syllogism:

> SCHRIRO establishes A (fundamental fairness).

C. The SCHRIRO Court's conslusion That RING should Not Be Applied Retroactively Does Not Apply Here, Where The Lower Standard Of Proof Undermines The Accuracy Of The Proceeding's Outcome, Because The Determination At Issue In RING Was Made Under The Beyond A Reasonable Doubt Standard.

In SCHRIRO, the majority's analysis ultimately turned on its conclusion that the evidence that "judicial fact-finding so 'seriously diminishes accuracy'...is simply too equivocal" to meet the second prong of TEAGUE'S second exception to the general rule against retroactivity. Id. at 2525(internal modifications omitted). That conclusion was limited to the RING rule, however, "[b]ecause Arizona law already required aggravating factors to be proved beyond a reasonable doubt." Id. at 2522 n.1. Because the rule at issue here allowed judicial factfinding under the diluted preponderance of the evidence standard, SCHRIRO'S ultimate conslusion that accuracy is not "seriously diminished" where a judge makes findings beyond a reasonable doubt is inapposite. Justice O'Connor recently indicated in dissent that SCHRIRO mandates that APPRENDI not be applied retroactively, BLAKELY v. WASHINGTON, 124 S.Ct. 2531, 2549 (2004)(O'Connor, J., Dissenting). Justice O'Connor's statement in BLAKELY is dicta in a dissenting opinion and is contrary to the Court's decision in SCHRIRO, in which she joined.

D. Increasing The Standard Of Proof From a Preponderance Of The Evidence To Beyond A Reasonable Doubt Seriously Enhances The Reliability And Accuracy Of The Outcome.

The requirement of proof beyond a reasonable doubt is central

-7-

to protecting the rights of the accused and the accuracy of criminal convictions. The Supreme Court has articulated the importance of that burden of proof in several contexts. In <u>CAGE v. LOUISIANA</u>, the Court emphasied <u>WINSHIP'S</u> recognition of the vital role of the reasonable doubt standard in avoiding convictions based on factual error:

> [T]he Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every <u>fact</u> necessary to constitute the crime with which he is charged." <u>IN RE WINSHIP</u>, 397 U.S. 358, 364(1970). ... This reasonable-doubt standard "plays a vital role in the American scheme of criminal procedure." <u>WINSHIP</u>, 397 U.S. at 363. Among other things, "it is a prime instrument for reducing the risk of convictions resting on factual error."

<u>CAGE v. LOUISIANA</u>, 498 U.S. 39, 39-40 (1990)(some internal citations omitted). <u>WINSHIP</u> itself repeatedly stressed the requirement of proof beyond a reasonable doubt is grounded upon accuracy concerns:

> The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt.

<u>WINSHIP</u>, 397 U.S. at 364 (quoting <u>SPEISER v. RANDALL</u>, 357 U.S. 513, 525-26 (1988)).

The Court also highlighted society's discreet interest in a more accurate standard:

> Moreover, use of the reasonable-doubt standard is indispensable to command the respect and confidence of the community in applications of the criminal law. It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent

-8-

men are being condemned. It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty.

WINSHIP, 397 U.S. at 364; see also JACKSON v. VIRGINIA, 443 U.S. 307, 316-17 (1979)("The WINSHIP doctrine requires more than simply a trial ritual. A doctrine establishing so fundamental a substantive constitutional standard must also require that the factfinder will rationally apply that standard to the facts in evidence."); FRANCIS v. FRANKLIN, 471 U.s. 307, 322 n.8 (1985)(referring to the government's burden to prove every element beyond a reasonable doubt as grounded in "bedrock due process principles"); UNITED STATES v. NOLASCO, 926 F.2d 869, 871 (CA9.1991)("The reasonable doubt standard gives substance to the presumption of innocence and instills confidence in the community that the innocent will not be condemned.")

The Supreme Court has repeatedly recognized the enhanced accuracy mandated by the rules in WINSHIP. In V. v. CITY OF NEW YORK, 407 U.S. 203, 205 (1972), the Court gave the rule announced in WINSHIP retroactive effect, because "the major purpose of the constitutional standard of proof beyond a reasonable doubt announced in WINSHIP was to overcome an aspect of a criminal trial that substantially impairs the truth-finding function." Subsequently, in HANKERSON v. NORTH CAROLINA, 432 U.S. 233, 240 (1977), the Supreme Court relied on V. and applied MULLANEY v. WILBUR, 421 U.S. 684 (1975), retroactively, because "the rule was designed to diminish the probability that an innocent person would be convicted and thus to overcome an aspect of a criminal trial that 'substantially impairs the truth-finding function.'"

-9-

Id. at 242. Indeed, for at least half a century, the Supreme Court has explicitly championed the accuracy enhancing role of the beyond a reasonable doubt standard. See SPEISER, 357 U.S. at 525-26; see also WINSHIP, 397 U.S. at 364.

Some Circuit's pattern jury instructions further illustrate this point. **Compare**, for instance, the Eighth Circuit Criminal Jury Instruction 3.11 (2002):

> A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

**with** the Eighth Circuit Civil Jury Instruction 3.04 (2001):

> To prove something by the [(greater weight) or (preponderance)] of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable. [If, on any issue in the case, the evidence is equally balanced, you cannot find that issue has been proved.]

A factfinder who is firmly convinced of the truth of the fact found has reached, **a priori**, a more reliable conclusion than if he or she had concluded the fact was more likely than not true. As a long line of Supreme Court cases illustrates, the criminal law's heightened standard of proof seriously enhances the accuracy of determinations.

Thus, under the TEAGUE syllogism:

> **WINSHIP, and the many of Supreme Court cases building on it, establish B(accuracy in enhancing).**

E. After SCHRIRO, Any Court's Opinion Contrary to Retroactivity of BLAKELY And APPRENDI Clearly Violates Supreme Court precedent.

-10-

In SCHRIRO, as discussed supra, the Supreme Court unanimously agreed that the RING rule - and, therefore, the APPRENDI rule - satisfied TEAGUE'S second exception. See SCHRIRO, 124 S.Ct at 2526. And see id. at 2528-31(Breyer, J., dissenting)(TEAGUE favors retroactivity of RING). Justice Breyer dissented in both BLAKELY (Court needs to determine the scope of its new rule, apparently including retroactiveity) and SCHRIRO (RING is a new rule that should be retroactive).

APPRENDI made absolutely clear, it is not the label (enhancement) that governs the analysis; the Constitution requires a jury finding beyond a reasonable doubt as to each fact, other than recidivism, establishing the applicable sentencing range. APPRENDI, 530 U.S. at 494, when the Court stated:

> [T]he New Jersey Supreme Court correctly recognized that ... "labels do not afford an acceptable answer." That point applies as well to the constitutionally novel and elusive distinction between "elements" and "sentencing factors." Despite what appears to us the clear "elemental" nature of the factor here, the relevant inquiry is one not of form, but of effect - does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict? (citations omitted)

In BLAKELY v. WASHINGTON, 124 S.Ct. 2538-40, decided the same day as SCHRIRO, the Court squarely held that the right to a jury trial on a sentencing enhancer was subject to the reasonable doubt standard to be decided by a jury. This was a logical extension of APPRENDI and RING. See APPRENDI, 530 U.S. at 494-95; RING, 536 U.S. at 597-609; BLAKELY, 124 S.Ct. 2539-40; see also RING, 536 U.S. 610 (Scalia, J., concurring), when Justice Scalia stated:

> The fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition

-11-

of the level of punishment that the defendant receives - whether the statute calls them elements of the offense, sentencing factors, or Mary Jane - must be found by the jury beyond a reasonable doubt.

In MULLANEY, 421 U.S. at 698, the Supreme Court condemned as unconstitutional Maine's attempt to characterize elements of its homicide statute as mere sentencing factors. BLAKELY put that to rest:

> Our precedents make clear, however, that the "statutory maximum" for APPRENDI purposes is the maximum sentence a judge may impose **solely on the basis of the facts reflected in the jury verdict or admitted by the defendant**... [T]he relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose **without** and additional findings.

BLAKELY, 124 S.Ct. at 2537 (emphasis in the original).

On June 26, 2000, the Supreme Court decided APPRENDI, holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

## CONCLUSION

As the Supreme Court established in TYLER, whether the Supreme Court has made a new rule retroactive under the second TEAGUE exception is purely a question of deductive logic. TYLER, 533 U.S. at 666-67; accord TYLER, 533 U.S. at 668-69 (O'Connor, J., concurring); TYLER, 533 U.S. at 672-73 (Breyer, J., dissenting). Therefore, the second TEAGUE exception reduces to a simple syllogism:

> **IF A NEW RULE IMPLICATES FUNDAMENTAL FAIRNESS AND SIGNIFICANTLY ENHANCES THE ACCURACY OF THE OUTCOME, THE RULE APPLIES RETROACTIVELY.**

Here, both premises are established by Supreme Court decisions. What is more fundamentally fair than a jury determination of

sentencing enhancers? That is the constitutional basis of APPRENDI BLAKELY:

> The APPRENDI/BLAKELY rule implicates fundamental fairness under the first prong of the second TEAGUE exception because BLAKELY mandated that juries determine sentencing enhancers.

SCHRIRO, 124 S.Ct at 2523; id. at 2527 (Breyer, J., dissenting) (RING must be retroactive; the risk of error is too great).

> **Findings beyond a resonable doubt significantly enhance the reliability of outcome determinative fact finding.**

WINSHIP, 397 U.S. at 364; cf. BLAKELY, 124 S.Ct. 2538-39:

> Our commitment to APPRENDI in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial. That right is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial ensures the people's ultimate control in the judiciary. See Letter XV by the Federal Framer (Jan. 18, 1788), reprinted in 2 THE COMPLETE ANTI-FEDERALIST 315, 320 (H. Storing ed. 1981) (describing the jury as "secur[ing] to the people at large, their just and rightful control in the judicial department"); John Adams, Diary Entry (Feb. 12, 1771), reprinted in 2 WORKS OF JOHN ADAMS 252, 253 (C. Adams ed. 1850)("[T]he common people, should have as complete a control...in every judgment of a court of judicature" as in the legislature); Letter from Thomas Jefferson to the Abbe ARnoux (July 19, 1879), reprinted in 15 PAPERS OF THOMAS JEFFERSON 282, 283 (J. Boyd ed. 1958)("Were I called upon to decide whether the people had best be omitted in the Legislature or Judiciary department, I would say it is better to leave them out of the Legislative"); JONES v. UNITED STATES, 526 U.S. 227, 244-248, 119 S.Ct. 1215, 143 L.Ed.2d 311(1999). APPRENDI carries out this design by ensuring that the **judge's authority to sentence derives wholly from the jury's verdict.** Without that restriction, the jury would not exercise the control that the Framers intended.
> Those who would reject APPRENDI are resigned to one of two alternatives. The first is that the jury need only find whatever facts the legislature chooses to label elements of the crime, and that those it labels sentencing factors-no matter how much they may increase the punishment-may be found by the judge. This would mean, for example, that a judge could sentence a man for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit it-or of making an illegal lane

while fleeing the death scene. Not even APPRENDI's critics would advocate this absurd result. Cf. 530 U.S. at 552-553, 120 S.Ct. 2348 (O'Connor, J., dissenting). The jury could not function as circuitbreaker in the State's machinery of justice if it were relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State actually seeks to punish.

**The Supreme Court has mandated the TEAGUE syllogism's conclusion, and APPRENDI and BLAKELY apply retroactively.** TYLER, 533 U.S. at 666-67.

Since the Supreme Court's June 24, 2004, decisions in SCHRIRO and BLAKELY, two Circuits have concluded that the APPRENDI/BLAKELY rule has not been made retroactive to cases on collateral review by the Supreme Court. UNITED STATES v. SIMPSON, 376 F.3d 679 (CA7, July 16, 2004); IN RE DEAN, 375 F.3d 1287 (CA11.July 9, 2004). Neither of those decisions, argued pro se, nor any of the handful of district court opinions holding BLAKELY not retroactive considered the logical argument set forth here. See id.

One District Court has held the question open pending the Supreme Court's cert. grant in BOOKER (UNITED STATES v. BOOKER, 204 WL 1627259 (U.S. July 21, 2004)), and ordered the government to respond to the issue. UNITED STATES v. MILLER, 204 WL 1795210 (WD.Wis. August 5, 2004).

THEREFORE, for all the reasons above stated and cited, this Court should order the immediate release of the Defendant as requested, and follow up with a resentence in light of the above logical reasoning.

Respectfully

*Johnie Wise* 82281-079
Johnie Wise, 82281-079
P.O. Box 7000
Texarkana, Texas 75505

CERTIFICATE OF SERVICE

I, Johnie Wise, hereby certify I have placed a copy of the above, DEMAND FOR IMMEDIATE RELEASE BECAUSE **BLAKELY** AND **APPRENDI** ARE RETROACTIVE UNDER **TEAGUE**, in the U.S. Mail on the 9 day of September, 2004, addressed as follows:

U.S. Attorney
600 E. Harrison
Brownsville, Texas  78520

*Johnie Wise*
Johnie Wise, 82281-079