IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JOHNIE WISE, | § | |
|     Petitioner, | § | |
| | § | |
| vs. | § | C.A. No. B-04-153 |
| | § | C.R. No. B-98-415 |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |
| | § | |

**RESPONDENT'S ANSWER TO SECTION 2255 MOTION
MOTION FOR SUMMARY JUDGMENT,
MOTION FOR DISMISSAL AND BRIEF**

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, hereinafter "the Government," by and through the United States Attorney for the Southern District of Texas, files this Answer to Section 2255 Motion, Motion for Summary Judgment, Motion for Dismissal, and Brief. In support thereof, the Government respectfully shows the court the following:

**I.**

**STATEMENT OF THE CASE/JURISDICTION**

On December 12, 2001, in the United States District Court for the Southern District of Texas, Brownsville Division, a grand jury returned a eight-count indictment charging Johnie Wise ("Wise") with one count of conspiring to use or

attempt to use a weapon of mass destruction, and seven counts of aiding and abetting Jack Abbot Grebe Jr. and Oliver Dean Emigh in threatening to use a weapon of mass destruction. (Dkt 1).[1]  On October 29, 1998, following an eight day jury trial, Wise was found guilty of counts four and five (two counts of aiding and abetting in threatening to use a weapon of mass destruction). (Dkt 194). On February 5, 1999, the district court sentenced Wise to 292 months in the custody of the Bureau of Prisons for each count to run concurrently, a five-year term of supervised release, and a $200 special assessment fee. (Dkt 230). The judgment and sentence were entered February 16, 1999. (Dkt 244). Wise filed a notice of appeal on February 25, 1999, raising several issues. On September 27, 2000, the United States Court of Appeals for the Fifth Circuit affirmed the judgment and sentence. (Dkt 261). Wise then petitioned for writ of certiorari with the U.S. Supreme Court, but certiorari was denied on April 10, 2001. 124 S. Ct. 933. Wise filed the instant action, C.A. C-04-424, on August 30, 2004.  As such, his motion is not timely and this court lacks jurisdiction under 28 U.S.C. § 2255.

---

[1] "Dkt" refers to the district clerk's docket. The number following is the item number.

## II.

## **FACTS UNDERLYING CONVICTION**[2]

In early March 1998, John Cain was shopping in Bargain Barn in Harlingen, Texas when he met the store's owner, John Ocie Roberts. Cain told Roberts that he did computer work on a contract basis and Roberts told Cain that he was member of the Republic of Texas (ROT) and, as such, frequently needed documents typed due to various court battles throughout the state. The next day, Cain returned, and had a four-hour conversation with Roberts regarding different computer services he could provide. Following that meeting, Cain met with Johnie Wise at Bargain Barn. The two men spoke in detail about various forms of documents and databases that could benefit both Roberts and the ROT. The next day, Cain went to the FBI's Resident Office in Brownsville, Texas, where he informed agents about his conversation and added that he wanted to make sure what he was doing was safe. The FBI agents replied that, based on what information Cain had provided, it was fine to work with the ROT, but cautioned that Cain was not to do anything illegal. After this discussion, Cain proceeded to perform significant amounts of word processing work for Roberts and the ROT. Later, Roberts provided Cain with the

---

[2] All facts are from the Presentence Report ¶¶ 7-20.

identities of two ROT members in order to determine if these individuals had outstanding arrest warrants. On March 17, 1998, Cain contacted the FBI and asked if it was legal for him to check via the National Crime Information Center to ascertain this information. The FBI informed him it was not. Roberts apparently told Cain he did not care about the illegality of the action and wanted it done.

Cain began attending ROT meetings with Roberts, periodically advising the FBI of what occurred at the meetings. Through March and April of 1998, Wise and Jack Abbot Grebe, Jr. (another ROT member Cain met at one of the meetings) frequented Cain's house for word processing and copying services. On April 29, 1998, Wise and Grebe asked Cain if he could find e-mail addresses for government agencies including the Chairman of the Internal Revenue Service, then-U.S. Attorney Janet Reno, the CIA director, the Texas Department of Public Safety, the Texas Attorney General, and several others. During this conversation, Wise asked Cain if there was a way to send e-mail message without leaving a trace. Cain stated that there were websites that could accomplish such a task.

On May 20, 1998, Cain informed FBI agents that Grebe and Wise had plans to threaten federal law enforcement agents. Cain related that Wise had spoken about means of taking prisoners– specifically achievable, Wise thought, through the use of a cactus thorn coated in poison delivered through a system utilizing a cigarette

lighter and a hypodermic needle. Cain told FBI agents that Wise had spoken about coating the cactus thorn with infectious diseases such as HIB, Anthrax, rabies or botulism. According to Cain, Wise planned to mail a prototype of the delivery device to the United States from Mexico. Grebe and Wise proposed to pack the device with some sort of illegal drugs in hopes it would be stopped by the Postal Service or U.S. Customs. This plan also involved placing a threatening letter with the package to prove their threats were credible.

    According to Cain, those threatening letters took the same form as the e-mailed threats Wise and Grebe provided Cain with on June 1, 1998 and requested him to send. Authored by Oliver Dean Emigh, the document was a "Declaration of War." Wise and Grebe asked Cain if there was a way in which to send the document without it being traced. Though Cain initially proposed sending the letter from the public library, the FBI did not approve of the plan. The FBI asked Cain if he was willing to cooperate fully with the case. Cain replied he was, and the FBI then authorized sending the "Declaration of War" from Cain's home. On June 12, 1998, Grebe went to Cain's residence and authorized him to e-mail the final draft of the "Declaration of War" to six federal law enforcement agencies, including the DEA. Cain sent the e-mails and later the same day he telephoned Wise to confirm the same. Wise informed Cain that he (Wise) needed to be working on the delivery

device.

On June 24, 1998, Wise and Grebe met with Cain to discuss the June 12 e-mails.  Wise and Grebe discussed the need of expediting their plan and decided to make Cameron County Court at Law Judge Migdalia Lopez their first target.  Wise suggested that the manner in which they should kill her was with an infection of rabies.  Wise and Grebe discussed following government employees and hurting their families.  They also discussed the best manner to produce botulism.  Wise noted that he had already purchased the items necessary to make the delivery device.

On June 26, 1998, Wise and Grebe traveled to Cain's home and instructed Cain to send threatening e-mails to employees and families of the President of the United States; Bureau of Alcohol, Tobacco and Firearms; the FBI; the DEA; the IRS; the U.S. Secret Service; and the U.S. Customs Service.  These messages were all the same with the exception of the salutation and the designated agency and read as follows:

> Dear (Designated Agency)
>
> Your (Designated Agency) employees and their families have been targeted for destruction by revenge.  We the people are extremely mad and will not accept the inequities any longer.  Non-tracable (sic), personal delivery systems have been developed to inject bacteria and/or viruses for the purpose of killing, maiming, and causing great suffering. Warn all concerned so that they may protect themselves and be made aware of this threat to themselves and their family.

Good Luck!

On June 30, 1998, U.S. Magistrate Judge John William Black issued arrest warrants for Grebe, Wise and Emigh and also issued search warrants for their residences. On July 1, 1998, FBI agents executed search warrants and placed Wise, Grebe and Emigh under arrest. No biological agents were located during the searches. At trial the case agent testified that if it were not for the FBI's arrest of the defendants in this case, the threats were to continue.

### III.

### ISSUE PRESENTED

Whether the District Court's conviction and sentence of Wise was proper in light of *Blaklely v. Washington*, 124 S.Ct. 2531 (2004).

### IV.

### MOTION FOR SUMMARY JUDGMENT AND DISMISSAL

**A.    Untimely Pleading:**

Prior to the enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), a movant could file a §2255 petition (eff. May 24, 1949) at any time. *United States v. Lopez*, 100 F.3d 113, 116-17 (10th Cir. 1996). After enactment of AEDPA, a movant must file within one year of the date the underlying conviction is final. On April 24, 1996, § 2255 was amended as follows:

A 1-year period of limitation shall apply to a motion under this section.

The limitation period shall run from the latest of -

>    (1) the date on which the judgment of conviction becomes final;
>
>    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
>
>    (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255; *See Dunn-McCampbell Royal Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1286 (5th Cir. 1997).

Wise's pleading is untimely. His judgment was entered on February 16, 1999. Wise appealed and the Fifth Circuit affirmed his conviction and sentence on September 27, 2000. Wise filed a petition for a writ of certiorari with the U.S. Supreme Court which was denied on April 10, 2001. Thus, his judgment was final on April 10, 2001. *See United States v. Gamble*, 208 F.3d 536, 537 (5${}^{th}$ Cir. 2000)(citations omitted)(noting that petition is timely if filed less than one year and ten days after entry of judgment); *see also Griffith v. Kentucky*, 479 U.S. 314, 321

n.6, 107 S.Ct. 708, 712 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.") (citations omitted); *United States v. Thomas*, 203 F.3d 350, 355-56 (5th Cir. 2000)(embracing 3rd Circuit analysis in context of finality where petition for certiorari was filed and denied after direct appeal and applying 28 U.S.C. §2244(d)(1)(A) to §2255 action ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....")).  Wise therefore had until April 10, 2002, to file a Section 2255 Motion.  This he did not do.

   Notably, Wise filed numerous motions following the denial of his petition for a writ of certiorari including an application for a Nunc Pro Tunc order to modify the judgment against him and multiple motions relating claiming alleged fraud and governmental misbehavior in his case.  However, none of these motions took the form of a section 2255 motion.

   As Wise filed the instant § 2255 petition more than 12 months after the date his judgment became final, his § 2255 motion is time barred under the limitations

9

provisions of AEDPA. Wise's motion should be dismissed as untimely. *See, e.g., Felder v. Johnson*, 204 F.3d 168, 170 (5th Cir. ), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 622 (2000) (citation omitted) (noting that *Davis v. Johnson*, 158 F.3d 806, 807 (5th Cir. 1998), *cert. denied*, 119 S.Ct. 1474 (1999), held that the AEDPA one-year limitations period was a statute of limitations rather than a bar to federal jurisdiction and could be tolled under "rare and exceptional circumstances"); *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. ), *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504 (1999)(noting that petition was untimely and no sufficient basis for equitable tolling proffered).

**B.     Equitable Tolling:**

In appropriate circumstances, equitable tolling can avert a dismissal of an untimely Section 2255 Motion. However, Wise has done nothing to establish the "rare and exceptional circumstances" for equitably tolling the limitations period. *See Felder*, 204 F.3d at 170-71(discussing examples that are "rare and exceptional" such as being prevented in some extraordinary way from asserting one's rights).

Ultimately, a petitioner bears responsibility for failure to act in a timely manner. In the present case, Wise fails to identify any reason preventing him from a diligent pursuit of relief under Section 2255 in a timely fashion before April 10, 2002. *See generally Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (citing

*Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999)), *cert. denied*, 121 S.Ct. 1498 (2001). Indeed, Wise has demonstrated his ability to utilize the legal avenues to voice his objections throughout his prolific output of motions during the nearly six years his case has been in the judicial system. Thus, Wise has failed to present any rationale for his late filing and therein does not qualify for equitable tolling.

C.     **Procedural bar: Failure to Raise Issues Precludes Collateral Relief.**

Wise did not raise any constitutional challenge to the sentencing guidelines prior to the present action. As such, he is precluded from doing so in this present action. A defendant cannot raise an issue for the first time on collateral review without showing both "cause for his procedural default, and actual prejudice resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)(en banc), *cert denied*, 502 U.S. 1076, 112 S.Ct. 978 (1992) (citing *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594 (1982)). The "cause and actual prejudice standard" is "a significantly higher hurdle than the plain error standard" applied on direct appeal. *Id.* A defendant must reach this "higher hurdle" even when alleging a fundamental constitutional error. *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 493, 106 S.Ct. 2639, 2648 (1986)). The only acknowledged exception to the application of this high standard is in the "extraordinary" case where an actual innocent person has been wrongly convicted.

*Shaid*, 937 F.2d at 232. Wise has not claimed or established his actual innocense and has failed to articulate any cause or actual prejudice in his failure to previously raise this issue. He is therefore procedurally barred from doing so in the present action.

### D.     Fifth Circuit Precedent forecloses this issue.

Even absent his procedural preclusion, Wise cannot prevail due to existing precedent foreclosing his *Blakely*[3] claims. In *Blakely*, the Supreme Court applied *Apprendi v. New Jersey*, 530 U.S. 466 (2000) to find that a Washington state statutory sentencing scheme was unconstitutional. The court ruled that the Washington scheme violated defendant Blakely's Sixth Amendment right to jury trial because it permitted the sentencing judge to impose a sentence above the "presumptive range" if the judge found that "substantial and compelling reasons" justified such an exceptional sentence; such factual findings, the *Blakely* court found, must be made by a jury and not by the judge. *Blakely*, 124 S. Ct. at 2537-38. Citing *Apprendi*'s rule that facts (other than prior convictions) which increase the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, *see* 530 U.S. at 490, the Supreme Court ruled that the presumptive range set out by Washington's scheme established a statutory maximum punishment, and that

---

[3] *Blakely v. Washington*, 124 S.Ct. 2531 (2004).

the sentencing judge's factual findings increased Blakely's sentence beyond that maximum. Accordingly, the court concluded, the Washington scheme ran afoul of the Sixth Amendment. *Blakely*, 124 S. Ct. at 2437-38. Significantly, the Court specifically stated that it was expressing no opinion on the federal Sentencing Guidelines. *Blakely*, 124 S. Ct. at 2538 n.9.

In *United States v. Pineiro*, 377 F.3d 464, 468-73 (5th Cir. 2004), the Fifth Circuit Court of Appeals held that *Blakely*, although it "strikes hard at the prevailing understanding of the Guidelines," nevertheless does not disapprove this Court's precedent holding "that the Guidelines do not establish maximum sentences for *Apprendi* purposes."[4] "*Blakely* may have weakened the long-embraced distinction between United States Code maxima and Guideline ranges, but we cannot conclude that *Blakely* – which explicitly reserved comment on the Guidelines – has abolished the distinction's importance." *Id.* at 473. *Pineiro* concluded: "Judicial findings under the Guidelines that set sentences within [the range set by Congress in the United States Code] therefore do not offend the Constitution." *Id.* As *Pineiro* is binding precedent, Wise is entitled to no relief.

---

[4] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

E.  **Even if *Blakely* applied to the federal sentencing guidelines, the holding is not retroactive.**

In *Schriro v. Summerlin*, ___ U.S. ___, 124 S.Ct. 2519 (2004), the Court held that *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002), which extended application of *Apprendi v New Jersey,* 530 U.S. 466, 120 S.Ct. 2348 (2000) to facts increasing the defendant's sentence from life imprisonment to death, is not retroactive to cases on collateral review.  Like the new rule announced in *Apprendi*, the principle adopted in *Blakely* constitutes a "new constitutional rule of criminal procedure," which, under *Teague v. Lane*, 489 U.S. 288 (1989), is not retroactively applicable to cases that became final before the decision was announced.[5]

F.  **Need for an evidentiary hearing/dismissal under Rule 8(a) of the Rules following § 2255.**

A Section 2255 Motion requires a hearing only when the files, motion, and record of the case fail to conclusively show that no relief is appropriate.  28 U.S.C. § 2255 (foll.), Rule 8(a).  *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983). The need for an evidentiary hearing depends upon an assessment of the record.  If

---

[5] The Supreme Court has defined a "new rule" as one that was not "'<u>dictated</u> by precedent existing at the time the defendant's conviction became final.'"  *Graham v. Collins*, 506 U.S. 461, 467 (1993) (quoting *Teague*, 489 U.S. at 301 (emphasis in *Teague*)); see *Sawyer v. Smith*, 497 U.S. 227, 234, 110 S.Ct. 2822, 2827 (1990).  Subsequent decisions have made clear that a rule may be "new" despite the fact that earlier cases supported it, *Sawyer v. Smith*, 497 U.S. at 236, 110 S.Ct. at 2827 "or even control or govern" it, *Saffle v. Parks*, 494 U.S. 484, 491, 110 S.Ct. 1257, 1261 (1990).

the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing. If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

Although the allegations of a *pro se* complaint are held to a less stringent standard than the formal pleading drafted by lawyers, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief, the cause will be dismissed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972). The record in the present case is sufficient to enable this court to resolve Wise's *Blakely* claim. As such, the instant cause does not merit a hearing.

## V.

## **CONCLUSION**

The government prays that the court enter an order denying Wise's request for relief under Section 2255 and dismissing this action.

                                       Respectfully submitted,

                                       MICHAEL T. SHELBY
                                       United States Attorney

By:      /S/_____
          TONY R. ROBERTS
          Assistant United States Attorney
          TX Bar No. 17022000
          S.Dist.Tx. No. 26173
          910 Travis, Suite 1500
          P.O. Box 61129
          Houston, Texas 77208
          (713) 567-9102

## CERTIFICATE OF SERVICE

I, Tony R. Roberts, do hereby certify that a copy of the foregoing Respondent's Answer and Motion to Dismiss was mailed on November 1, 2004, via certified mail, return receipt requested to:

Johnie Wise
No. 82281-079
FCI- Three Rivers, Texas
P.O. Box 7000
Texarkana, Texas 75505

_____/s/_____
TONY R. ROBERTS
Assistant United States Attorney