COUNTY RECORDER; RETURN TO:

Johnie Wise 82281-079
c/o P.O. Box 7000
Texarkana, Texas [75505]

United States District Court
Southern District of Texas
FILED

FEB 0 7 2005

Michael N. Milby
Clerk of Court

COMMERCIAL SECURITY AGREEMENT
NON-NEGOTIABLE -- NON-TRANSFERABLE
FILED FOR RECORD

**Parties**

**DEBTOR**

JOHNIE WISE
aka J. WISE,
aka JOHNIE J. WISE
P.O. Box 7000
Texarkana, Texas [75505]
SOCIAL SECURITY #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

***Secured Party***

Johnie Wise
c/o P.O. Box 7000
Texarkana, Texas [75505]

**AGREEMENT**

This Security Agreement ("AGREEMENT") is made and entered into on February 27, 1926 by and between the 'real man' Johnie Wise (hereinafter known as the Secured Party) and the Juristic Person/Strawman/Dummy Corporation (also known as an *ens legis*) JOHNIE WISE, ORGANIZATION (hereinafter known as DEBTOR) Social Security Number 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.

NOW THEREFORE, it is hereby agreed as follows:

In consideration for the Secured Party agreeing to provide certain Collateral and goods, identified hereinbelow, and certain accommodations to the Debtor including, but not limited to, allowing the DEBTOR to act as an agent, utilized for the purpose of transmitting commercial activity for the benefit of the Secured Party to the extent that the context otherwise required, for the purpose of conducting traffic in commercial activity for the benefit of the Secured Party, DEBTOR hereby grants to Secured Party for valuable consideration a security interest in the Collateral described hereinbelow and agrees to provide to Secured Party the Indemnification Bond also contained hereinbelow. Securing the indebtedness and agreeing that the Secured Party shall have the rights stated in this Agreement with respect to the

collateral in addition to all other rights which Secured Party may have by law.

The security interest granted herein secures any and all indebtedness and liabilities, whatsoever, owed by DEBTOR to Secured Party whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising and howsoever evidenced. This security interest is also given to secure any other debts which may be owed by DEBTOR to Secured Party from time to time as stated herein below.

**COLLATERAL**

1. Birth Certificate,
2. Texas Driver License, #03404377,
3. Texas Voter Registration Application and Card,
4. FAA Private Pilot License # (unknown),
5. Any and all claims against the UNITED STATES,
6. Any and all claims against the STATE OF TEXAS or any other STATE,
7. Any and all claims against COUNTY OF CAMERON or any other COUNTY.
8. Any and all claims against CITY OF OLMITO or any other CITY,
9. Personal property of Johnie Wise
10. Any and all real property Johnie Wise may have or had an interest in,
11. And, any future acquired personal and/or real property.


**INDEMNITY CLAUSE**

Know all men by these presents, that I JOHNIE WISE, (DEBTOR), am held firmly bound unto Johnie Wise (Secured Party) in the sum of present Collateral Values and any debts or losses claimed by any and all persons against the Commercial Transactions and Investments of aforesaid Collateral up to the penal sum of Unlimited Amount ($ Unlimited) lawful money of the United States, for the payment of which, well and truly made, I bind myself, my heirs, executors, administrators and third party assigns, jointly and severally and firmly by these presents.

The conditions of the above bond is, that whereas the Collateral described hereinabove and utilized for the purpose of transmitting goods in Commercial Activity by the DEBTOR are in pursuance of the Statutes in such case made, provided and indentured to the Secured Party by which indenture the said DEBTOR covenanted to be compelled to certain performance as stated in this agreement.

The conditions of this obligation are such that if Secured Party suffers any loss of Vested Rights in the said Collateral Property or Monetary Losses due to debts claimed against the aforesaid Collateral Property, or the DEBTOR, who binds himself by this obligation to make advance payments from DEBTOR'S U.S. Treasury Accounts established under IMF, BMF, IRAF, EPMF (temporary, permanent and current) accounts to any and all who make debt claims against any of the Collateral or Vested Rights in said Collateral of Secured Party, this obligation shall bind the DEBTOR in all respects to fully and faithfully comply with all applicable provisions of law.

This bond shall effect as of the date hereon and shall remain in full force and effect until the surety (Secured Party) is released from liability by the written order of the UNITED STATES Government and provided that the DEBTOR may cancel this bond at any time and be relieved of further liability hereunder by delivery within thirty (30) days written notice to the Secured Party. Such cancellation shall not effect any liability incurred or accrued by DEBTOR hereunder prior to the termination of said thirty (30) day period. The DEBTOR will promptly reissue a bond before the end of the thirty (30) day period for an amount equal to or greater than the value of this instrument unless the parties agree otherwise.

The DEBTOR (Indemnifying Party) without the benefit of discussion or division does hereby agree, covenant and undertake to indemnify, defend and hold the Secured Party harmless from and against any and all liabilities, costs, interests and expenses (hereinafter referred to as "claims" or a "claim") including, without reservation or restriction, all legal costs, interests, penalties and fines suffered or incurred by the Secured Party arising as a result of the Secured Party having its personal guarantee with respect to any loan or general indebtedness of the DEBTOR including, without in any way restricting the generality of the foregoing amount owing by the DEBTOR to all creditors.

The Indemnified Party (Secured Party/Surety) shall promptly advise the Indemnifying Party (DEBTOR) of any claim and provide the same with full details thereof, including copies of any documents, correspondence, suit or action received by or served upon the Indemnified Party (Secured Party). The Indemnified Party (Secured Party) shall fully cooperate with the Indemnifying Party (DEBTOR) in any discussion, negotiations or other proceedings relating to any claim.

**OBLIGATIONS OF THE DEBTOR**

**ORGANIZATION.** DEBTOR is a corporation, business trust or trust which is duly organized, validly existing, and in good standing under the laws of the United States.

**AUTHORIZATION.** The execution, delivery, and performance of this

Agreement by DEBTOR have been duly authorized by all necessary action by an organization, or bylaws, or (a) any agreement or other instrument binding upon DEBTOR, or (b) any law, governmental regulation, court decree, or order applicable to DEBTOR.

**PERFECTION OF SECURITY INTEREST.** DEBTOR agrees to execute such financing statements and to take whatever other actions are requested by Secured Party to perfect and continue Secured Party's interest in the Collateral and DEBTOR will deliver to Secured Party any and all of the documents evidencing or constitution the Collateral, and DEBTOR will note Secured Party's interest upon any and all chattel paper if not delivered to Secured Party for possession by Secured Party. DEBTOR will promptly notify Secured Party of any change in DEBTOR's name including any change to the assumed business names of DEBTOR. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time DEBTOR may not be indebted to Secured Party.

**ENFORCEABILITY OF COLLATERAL.** To the extent the Collateral consists of accounts, contract rights, chattel paper, intellectual property or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content, and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.

**TRANSACTIONS INVOLVING COLLATERAL.** Except for inventory sold or accounts collected in the ordinary course of DEBTOR'S business, DEBTOR shall not sell, or otherwise transfer or dispose of the Collateral. DEBTOR shall not pledge, mortgage, encumber, or otherwise transfer or dispose of the Collateral to be subject to any lien, security interest, encumbrance, or charge, other that the security interest provided for in this Agreement without the prior written consent of Secured Party. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Secured Party, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Secured Party and shall not be commingled with any other funds: provided however this requirement shall not constitute consent by Secured Party to any sale or other disposition. Upon receipt DEBTOR shall immediately deliver any such proceeds to Secured Party.

**TITLE.** DEBTOR represents and warrants to Secured Party that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or which Secured Party has specifically consented. DEBTOR shall defend Secured Party's rights in the Collateral against the claims and demands of all

other persons.

**MAINTENANCE AND INSPECTION OF COLLATERAL.** DEBTOR shall maintain all tangible Collateral in good condition and repair. DEBTOR will not commit or permit damage to or destruction of the Collateral or any part of the Collateral. Secured Party and its designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the Collateral wherever located. DEBTOR shall immediately notify Secured Party of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral, of any request for credit or adjustment or of any other dispute arising with respect to the Collateral and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

**TAXES, ASSESSMENTS AND LIENS.** DEBTOR will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. DEBTOR may withhold any such payment or may elect to contest any lien if DEBTOR is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Secured Party's interest in the Collateral is not jeopardized in Secured Party's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, DEBTOR shall deposit with Secured Party cash, a sufficient corporate surety bond or other security satisfactory to Secured Party in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest DEBTOR shall defend itself and DEBTOR shall satisfy any final adverse judgment before enforcement against the Collateral.

**COMPLIANCE WITH GOVERNMENTAL REQUIREMENTS.** DEBTOR shall comply promptly with all laws, ordinances and regulations of all governmental authorities applicable to the production, disposition, or use of the Collateral. DEBTOR may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Secured Party's interest in the Collateral, in Secured Party's opinion, is not jeopardized.

**DEBTOR'S RIGHT TO POSSESSION.** Until default, DEBTOR may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that DEBTOR's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Secured Party is required by law to perfect Secured Party's security interest in such Collateral. If Secured Party at any time has possession of any Collateral, whether before or after an Event of Default, Secured Party shall be deemed to have exercised reasonable care for the custody and preservation of the

Collateral, if Secured Party takes such action for that purpose as DEBTOR shall request or as Secured Party, in Secured Party's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by DEBTOR shall not of itself be deemed to be a failure to exercise reasonable care. Secured Party shall not be required to take any steps necessary to preserve any rights in he Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Collateral.

**EXPENDITURES BY SECURED PARTY.** If Secured Party must discharge or pay any amounts under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, or other claims at any time levied or placed on the Collateral, Secured Party also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All Expenditures incurred or paid by Secured Party for any purposes will then bear interest at the rate of 8% per annum.

### SUBORDINATION OF DEBTOR'S DEBTS TO SECURED PARTY

DEBTOR agrees that the indebtedness of the DEBTOR to the Secured Party, whether now existing or hereinafter created shall be prior to any such claim that any Third Party may now have or hereafter acquire against DEBTOR whether or not DEBTOR becomes insolvent. DEBTOR hereby expressly subordinates any and all claim(s) DEBTOR may have against Secured upon any account whatsoever to any claim that the Secured Party may now or hereafter have against DEBTOR. In the event of insolvency and consequent liquidation of the assets of the DEBTOR through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of the DEBTOR applicable to the payment of the claims of both Secured Party and DEBTOR shall be paid to Secured Party and shall be first applied by Secured Party to the indebtedness of DEBTOR to Secured Party. DEBTOR does hereby assign to Secured Party all claims which it may have or acquire against DEBTOR or against any assignee or trustee in the bankruptcy of DEBTOR provided that such assignment shall be effective only for the purpose of assuring to Secured Party full payment in legal tender of the indebtedness. If the
 Secured Party so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of DEBTOR to Third Party shall be marked with a legend that the same are subject to this Agreement and shall be delivered to Secured Party. DEBTOR agrees and the Secured Party hereby is authorized in the name of DEBTOR from the time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Secured Party deems necessary or appropriate to perfect, preserve and enforce the rights under this Agreement.

### MISCELLANEOUS PROVISIONS

The following miscellaneous provisions are a part of this

Agreement:

**AMENDMENTS.** This Agreement together with any related documents constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement expressly or orally shall be effective unless expressed in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**APPLICABLE LAW.** This Agreement has been delivered to Secured Party and accepted by Secured Party in the State of Texas. If there is a lawsuit DEBTOR agrees upon Secured Party's request to submit to the jurisdiction of the Texas state courts in the Judicial District at or nearest Secured Party's address shown above or at the Secured Party's option, to the jurisdiction of the courts wherever any Property is located. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**ATTORNEY'S FEES; EXPENSES.** DEBTOR agrees to pay upon demand of Secured Party's costs and expenses including reasonable attorney's fees and Secured Party's legal expenses incurred in connection with the enforcement of this Agreement. Secured Party may pay a third party to help enforce this Agreement and DEBTOR shall pay the costs and expenses of such enforcement. Costs and expenses include Secured Party's reasonable attorney's fees and legal expenses whether or not there is a lawsuit to include legal expenses for bankruptcy proceedings (and efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. DEBTOR also shall pay all court costs and such additional fees as may be directed by the court.

**NOTICES.** Except for revocation notices by DEBTOR all notices required to be given by either party to the other under this Agreement shall be in writing and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing.

**INTERPRETATION.** In all cases where there is more than one DEBTOR or the DEBTOR's principles, the UNITED STATES or the STATE OF TEXAS is in any way involved, then all words used in this Agreement in the singular shall be deemed to be used in the plural where the context and construction so require; where there is more than one DEBTOR named in a Claim or when this Agreement is executed on more than one DEBTOR the words "DEBTOR" respectively shall mean all and any one or more of the DEBTORS. The words DEBTOR and Secured Party shall include the heirs, successors, assigns, and transferees of each of DEBTOR or Secured Party. Caption heading in this Agreement are for convenience purposes

only and are not to be used to interpret or define the provisions of this Agreement.

**SEVERABILITY.** Should any portion of this Agreement be judicially determined to be invalid or unenforceable, the remainder of this Agreement shall not be affected by such determination and shall remain in full force and effect. If feasible, any such offering provision shall be deemed to be modified to be within the limits of enforceability, or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**WAIVER.** Secured Party shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Secured Party. No delay or omission on the part of Secured Party in exercising any right shall operate as a waiver of such right or any other right. A waiver by Secured Party of a provision of this Agreement shall not prejudice or constitute a waiver of Secured Party's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Secured Party nor any course of dealing between Secured Party and DEBTOR shall constitute a waiver of any of Secured Party's rights or any of DEBTOR's obligations as to any future transactions. Whenever the consent of Secured Party is required under this Agreement, the granting of such consent by Secured Party in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld at the sole discretion of Secured Party.

### DEFAULT

The following shall be events of default hereunder: (a) failure by DEBTOR to pay any debt secured hereby when due; (b) failure by DEBTOR to perform any obligations secured hereby when the same should be performed.

**EVENT OF DEFAULT.** The words "Event of Default" mean and include any Events of Default set forth below in the section titled "Events of Default."

**DEBTOR.** The word DEBTOR means and includes without limitation each and all of the DEBTORS and their Principals, sureties, and accommodation parties in connection with the indebtedness.

**INDEBTEDNESS.** The word "Indebtedness" means the indebtedness evidenced by this Agreement including all principal and interest together with all other indebtedness and costs and expenses for which DEBTOR is responsible under this Agreement or under any of the related documents. In addition, the word "Indebtedness" includes all other obligations, debts and liabilities plus interest thereon of DEBTOR'S ORGANIZATION or any one or more of them to Secured Party, as well as all claims by Secured Party

against DEBTOR or any one or more of them whether or not DEBTOR may be liable individually or jointly with others, whether or not DEBTOR may be obligated as DEBTOR, surety, accommodation party or otherwise, whether or not recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations, and whether or not such indebtedness may be or hereafter may become otherwise unenforceable.

**RELATED DOCUMENTS.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, security agreements. registrations, securities with or without a pledge, trust receipts, field warehousing documents, factor's liens, accounts, U.C.C. contract accounts, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

### EVENTS OF DEFAULT

Each of the following shall constitute and Event of Default under this Agreement:

1. **DEFAULT ON INDEBTEDNESS.** Failure of DEBTOR to make any payment when due on the Indebtedness.

2. **OTHER DEFAULTS.** Failure of DEBTOR to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement, in any of the Related Documents or in any other Agreement between Secured Party and DEBTOR will constitute an event of default If any failure other than a failure to pay money is curable and if DEBTOR has not been given prior notice of a breach of the same provision of this Agreement, it may be cured (and no Event of Default will have occurred) if DEBTOR, after Secured Party sends written notice demanding cure of such failure, the failure is cured (a) if DEBTOR cures such failure within fifteen (15) days, or (b) if the cure requires more than fifteen (15) days, the DEBTOR immediately initiates steps sufficient to cure the failure and thereafter continues and completes all reasonable and necessary steps sufficient to establish compliance as soon as reasonably practical.

3. **FALSE STATEMENTS.** Any warranty, representation or statement made or furnished to Secured Party by or on behalf of DEBTOR under this Agreement is false or misleading in any material respect, either now or at the time made or furnished.

4. **DEFECTIVE COLLATERALIZATION.** If any of the collateral property secured by this agreement is found to be defective in any manner, this Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien)at any time and for any reason.

5. **INSOLVENCY.** Insolvency of the DEBTOR SHALL be construed as

the dissolution or termination of DEBTOR's existence as a going business, the insolvency of DEBTOR, the appointment of a receiver for any part of DEBTOR's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency by laws by or against DEBTOR.

**6. CREDITOR PROCEEDINGS.** Creditor proceedings shall be construed to mean commencement of foreclosure whether by judicial proceedings, self-help, repossession or any other method, by any creditor of DEBTOR against the Collateral or any other collateral securing the Indebtedness, including, but not limited to, a garnishment of any of DEBTOR's deposit accounts with Secured Party. However, this Event of Default shall not apply if there is a good faith dispute by DEBTOR as to the validity or reasonableness of the claim which is the basis of the creditor proceeding and if DEBTOR gives Secured Party written notice of the creditor proceeding and deposits with Secured Party moneys or a surety bond sufficient for such creditor proceeding in an amount determined by Secured Party, in his sole discretion, as being an adequate reserve or bond for the dispute.

**7. EVENTS AFFECTING DEBTOR.** Any of the preceding events occurs with respect to any DEBTOR of any of the Indebtedness or such DEBTOR dies or becomes incompetent. Secured Party at his option may, but shall not be required to, permit the DEBTOR's estate to assume unconditionally the obligations arising under this Agreement in a manner satisfactory to Secured Party and in doing so cure the Event of Default.

**8. INSECURITY.** Secured Party in good faith deems himself insecure.

## RIGHTS AND REMEDIES ON DEFAULT

If an Event of Default occurs any time after and under this Agreement Secured Party shall have all the rights of a Secured Party under the Texas Business and Commerce Code. In addition and without limitation Secured Party may exercise any one or more of the following rights and remedies.

**A. ACCELERATE INDEBTEDNESS.** Secured Party may declare the entire Indebtedness, not limited to any prepayment penalty which DEBTOR would be required to pay to immediately be due and payable without notice.

**B. ASSEMBLE COLLATERAL.** Secured Party may require DEBTOR to deliver to Secured Party all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Secured Party may require DEBTOR to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party. Secured Party also shall have full power to enter upon the property of DEBTOR to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, DEBTOR

agrees Secured Party may take such other goods provided that Secured Party makes reasonable efforts to return them to DEBTOR after repossession.

**SELL THE COLLATERAL.** Secured Party shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in its own name or that of DEBTOR. Secured Party may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give DEBTOR reasonable notice of the time after which any private sale or any other intended disposition of the Collateral is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secure by this Agreement and shall be payable on demand with interest at the Note rate unless payment of interest at that rate would be contrary to applicable law in which event such expenses shall bear interest at the highest rate permitted by applicable law from date of expenditure until repaid.

**APPOINT RECEIVER.** To the extent permitted by applicable law, Secured Party shall have the following rights and remedies regarding the appointment of a receiver: (a) Secured Party may have a receiver appointed as a matter of right, (b) the receiver may be an employee of Secured Party and may serve without a bond, and (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand with interest at the Note rate unless payment or interest at that rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate by applicable law from date of expenditure until paid.

**COLLECT REVENUES, APPLY ACCOUNTS.** Secured Party either itself or through a receiver may collect the payments, rents, income, and revenues from the Collateral. Secured Party may at any time in its discretion transfer any Collateral into its own name or that of its nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Secured Party may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, chooses in action, or similar property, Secured Party may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Secured Party may determine whether or not indebtedness or Collateral is then due. For these purposes, Secured Party may on behalf of in the name of DEBTOR receive, open and dispose of mail addressed to DEBTOR, change any address to which mail and payments are to be sent and endorse notes, checks,

drafts, money orders, documents of title, instruments and items pertaining to payment, shipment or storage of any Collateral. To facilitate collection Secured Party may notify account debtors and obligors on any Collateral to make payments directly to Secured Party.

**OBTAIN DEFICIENCY.** If Secured Party chooses to sell any or all of the Collateral, Secured Party may obtain a judgment against DEBTOR for any deficiency remaining on the Indebtedness due to Secured Party after application of all amounts received from the exercise of the rights in this Agreement. DEBTOR shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**OTHER RIGHTS AND REMEDIES.** Secured Party shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code as may be amended from time to time. In addition Secured Party shall have and may exercise any or all other rights or remedies it may have available at law, inequity, or otherwise.

**CUMULATIVE REMEDIES.** All of Secured Party's rights and remedies whether evidenced by this Agreement or the Related Documents or by any other writing shall be cumulative and may be exercised singularly or concurrently. Election by Secured Party to pursue any remedy shall not exclude pursuit of any other remedy and an election to make expenditures or to take action to perform an obligation of DEBTOR under this Agreement after DEBTOR's failure to perform shall not affect Secured Party's right to declare a default and to exercise his remedies.

**THIS STATEMENT UPON PRESENTATION TO THE FILING OFFICER IS CONSIDERED TO BE FILED FOR RECORD IN ACCORDANCE WITH TEXAS BUSINESS AND COMMERCE CODE, 9.401 AND 9.403(a).**

DATE: _____

DEBTOR SIGNATURE: *Johnie Wise*

DEBTOR SOCIAL SECURITY NUMBER: 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

Secured Party Signature: *Johnie Wise*

The Secured Party accepts the DEBTOR signature in accord with Texas Business & Commerce Code 3.415 and 3.419.

### DEFINITIONS and GLOSSARY of TERMS

As used in this Security Agreement, the following words and terms shall have the meanings ascribed to them in this section, *non*

*obstante.*

**Accommodation Party.** See: Black's Law Dictionary, 6th Edition. See also: Texas Business and Commerce Code 3.415 and 3.419.
**Account.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus.& Com.Code 4.104(a)(1) and 9.106.
**Agent.** See: Black's Law Dictinary, 6th Ed.
**Agreement.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 1.201(3).
**Artificial Person.** See: Black's Law Dictionary, 7th Ed. See also: Dummy Corporation, *ens legis*, and strawman.
**Bailee.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code7.102(a)(1).
**Beneficiary.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 4A.103(a)(2).
**Buyer.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 2.103(a)(1).
**Chargeback.** See: Black's Law Dictionary, 6th Ed. See also: Surety and Tex.Bus. & Com.Code 4.212
**Chattel Paper.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 9.105(a)(2).
**Claim.** 1. Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, or contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or right to an equitable remedy for breach of performance if such breach rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, indisputed, secured or unsecured. 2. To demand as one's own, challenge of property or ownership of a thng which is wrongfully withheld. See: <u>Hill v. Henry</u>, 66 N.J.Eq 150, 57 Atl. 555. Also a claim is to state. See: <u>Douglas v. Beasley</u>, 40 Ala. 147; <u>Price v. Pennsylvania</u>, 16 Pet. 615, 10 L.Ed. 1060.
**Collateral.** See: Black's Law Dictionary, 6th Ed. See also: Tex. Bus. & Com.Code 9.105(a)(3).
**Contract.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 1.201(11).,
**Contract Right.** See: Tex.Bus. & Com.Code 9.106.
**Creditor.** A person to whom a debt is owing by another person who is the DEBTOR. One who has a right to require the fulfillment of an obligation or contract. One to whom money is due, and, in ordinary acception has reference to financial or business transactions. The antonym of DEBTOR. See also: Black's Law Dictionary, 6th Ed. and see: Tex.Bus. & Com.Code (12) (Secured Party).
**Currency.** See: Black's Law Dictionary, 7th Ed.
**Derivatives.** Coming from another, taken from something preceding; secondary. That which has not its origin in itself, but owes its existence to something foregoing. Anything obtained or deduced from another. See also: Black's Law Dictionary, 6th.
**Debt.** See: Black's Law Dictionary, 6th Ed. See also: <u>Burke v. Boulder Milling & Elevator Co.</u>, 77 Colo. 230, 235 P.574, 575; and <u>U.S. Sugar Equalization Board v. P. De Ronde & Co.</u>, C.C.A. Del. 7 F.2d 981, 984.

**Debtor.** THE ORGINIZATION named herein and any and all derivatives thereof; See: Black's Law Dictionary, 6th Ed., and See: Tex.Bus. & Com.Code 9.105(a)(4).
**Delivery.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 1.201(14).
**Delegation of Performance.** See: Tex.Bus. & Com.Code 2.210.
**Documents of Title.** See: Black's Law Dictionary, 7th Ed. See also: Tex.Bus. & Com.Code 1.201(15), 78.104, 9.105(6).
**Dummy Corporation.** THE ORGINIZATION named herein and any and all derivatives thereof; and *ens legis*, an artificial person or legal entity created by or under the authority of the laws of a state or nation, composed, in some rare instances of a single person (such as the DEBTOR). "The corporation is distinct from the individual or individuals who comprise it." Such entity subsists as a body politic under a special denomination, which is regarded in law as having a personality and is distinct of its several members. See: Dartmouth College v. Woodward, 4 Wheat. 518, 636, 657, 4 L.Ed. 629; U.S. v. Trinidad Coal Co., 137 U.S. 160, 11 S.Ct. 57, 34 L.Ed. 640; Andrews Bros. Co. v. Youngstown Coke Co., 86 F. 585, 30 C.C.A. 293, Porter v. Railroad Co., 76 Ill. 573; Nebraska Wheat Grower's Ass'n v. Smith, 115 Neb. 177, 212 N.W. 39, 44; State v. Thistle Down Jockey Club, 114 Ohio St. 582, 151 N.E. 7809, 711; Congdon v. Congdon, 160 Minn. 343, 200 N.W. 786, 87; Forrest City Mfg. Co. v. International Ladies Garment Workers' Union Local No. 104, 233 Mo.App. 935, 111 S.W.2d 934; In re Crown Heights Hospital, 183 Misc. 563, 49 N.Y.S.2d 658, 660; Froelich and Kutter of Manila P.I. v. Sutherland, 57 App.D.C. 294, 22 F2d 870, 872. And also "in rare instances where it lists a single person (such as the DEBTOR) this would be considered a corporation sole, which consists of only that one person only and his successors, in some particular station, who are incorporated by law in order to give them some legal capacities and advantages, particularly that of perpetuity, which in their natural persons they could not have." (Or, in the present situation, to give them some legal capacity or advantage of dealings in the government commercial activities which in their natural persons they could not have.) See: Step.Comm., 168, 169; First Parish v. Durming, 7 Mass. 447; Reid v. Barry, 93 Fla. 849, 112 So. 846, 859. The court cases also state that a corporation may exist as Domestic or Foreign, with reference to the laws and the courts of any given state, a "domestic" corporation is one created by or organized under the laws of that state; a "foreign" corporation is one created by or under the laws of another state, government or country. ((As in the present situation of a U.S. corporation in Puerto Rico, see: (BMF) Business Master File)) In re Grand Lodge, 110 Pa. 613, 1 A. 582; Fowler v. Chillingworth, 94 Fla. 1, 113 So. 667, 669; In re Ewles' Estate, 105 Utah 507, 143 P.2d 903, 905. The court cases also state that, "A corporation *de facto* is one existing under the color of law and in pursuance of an effort made in "good faith" to organize a corporation under the statute; an association of men claiming to be a legally incorporated company and exercising the powers and functions of a corporation, but without actual lawful authority to do so." See: Foster v. Hare, 26 Tex.Civ.App.177, 62 S.W. 541; Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 91

N.W. 1081; <u>Tulare Irrig. Dist. v. Shepard</u>, 185 U.S. 1, 22 S.Ct. 531, 46 L.Ed. 773; <u>Evans v. Anderson</u>, 132 Minn. 59, 155 N.W. 1040, 1041. The fictitious named DEBTOR, dummy corporation, *ens legis*, or strawman created by the government without knowledge or intent by the natural man (or woman) only exists under color of law, presumption, and claiming to be legally incorporated for the purpose of commerce and exercising the powers and functions of a corporation without actual lawful authority to do so, but strictly for the benefit of the government and its commerce. The government shows the all capital letter spelling of the DEBTOR name when the government created the "fictitious named corporation" because of the need for a specific name required for each seperate legal entity's identification. Therefore, when a corporation is constructed, a name is always given to it, or supposing to be actually given, will attach to the corporation by implication, and by that name is capable of being changed (by competent authority) without affecting the identity or capacity of the corporation. See: <u>Wharton on Corporations</u>, also see:Black's Law Dictionary, 6th Ed.
**Duty of Care; contractual Limitation.** See: Tex.Bus. & Com.Code 7.204.
**Ens legis.** See: Black's Law Dictionary, 6th Ed.
**Entrusting.** See: Tex.Bus. & Com.Code 2.403(b), (c), & (d).
**General Intangibles.** See: Black's Law Dictionary, 6th Ed., and see: Tex.Bus. & Com.Code 9.106.
**Incapacity.** See: Black's Law Dictionary, 6th & 7th Ed. and see: Tex.Bus. & Com.Code3.305(b)
**Indemnities.** See: Tex.Bus. & Com.Code 5.113.
**Indemnity.** A collateral contract or assurance by which one person engages t secure another against an anticipated lass or to prevent him from being damnified by the legal consequences of an act or forebearance on the part of one of the parties or of some third person. See: <u>Nat'l Bank of Tifton v. Smith</u>, 142 Ga. 663, 83 S.E. 526, 528 L.R.A. 1915B, 116, and see: Black's Law Dictionary 7th Ed.
**Instrument.** See: Black's Law Dictionary, 6th Ed. and see: Tex.Bus. & Com.Code 3.104 and 9.105(a)(2).
**Item.** Any part or parts of a whole. See: Tex.Bus. & Com.Code 4.104(a)(7).
**Juristic Person.** See: <u>United States v. Scophony Corp.</u>, 26 F.Supp. 666, "From earliest times the law has enforced rights and exacted liabilities by utilizing a corporate concept -- by recognizing, that is, Juristic Persons other than Human Beings (or other than living men and women). The theories by which this mode of legal operation has developed, has been justified, qualified, and defined are the subject-matter of a very sizable library. The historic roots of a particular society, economic pressures, philosophic notions, all hve had their share in the law's response to the ways of men caarrying on their affairs through what is now the familiar device of the Corporation -- Attribution of legal rights and duties to a JURISTIC PERSON other than man is necessarily a metaphorical process, and none the worse for it. No doubt, Metaphors in law are to be narrowly watched lest tehy be abused and fail in their service to reason.: See also: <u>Cardozo</u>

J., in <u>Berkey v. Third Avenue R. Co.</u>, 244 N.Y. 84, 94. But all instruments of thought should be narowly watched lest they be abused and fail in their service to reason. And see: DEBTOR, DUMMY CORPORATION, ENS LEGIS, and ARTIFICIAL PERSON.
**Liability.** Every kind of legal obligation, responsibility or duty. Also the state of being bound or obligated in law or justice to do, pay or make good something. See: <u>Mayfield v. First Nat'l Bank of Chattanooga, Tenn.</u>, C.C.A. Tenn. 137 F.2d 1013, 1019; <u>Foil v. City of Coer d'Alene</u>, 23 Idaho 32, 129 P. 643, 649, 43 A.L.R. N.S. 1095; <u>Breslaw v. Rightmire</u>, 196 N.Y.S. 539, 541, 119 Misc. 833. See also: Black's Law Dictionary, 6th Ed.
**Money.** The medium of exchange authorized or adopted by a government as part of its currency. See also: Tex.Bus. & Com.Code 2.201(24).
**Natural Person.** A living man (or woman) as destinguished from an artificial person created by law. Refers to the Secured Party named herein. See: Black's Law Dictionary, 7th Ed. Also: "Persons are divided by the law into either natural persons, or artificial. Natural persons are such as the God of nature formed us; artificial are such as are created and devised by human laws for the purposes of society and government, which are called corporations or bodies politic." Blackstone's Commentaries, Book I, Ch. 1, Sec. 164. And see: Genesis 1:27 and Black's Law Dictionary, 1st Ed.
**Negotiable.** Capable of being transferred by indorsement or delivery so as to pass to holder the right to sue in his own name and take free of equities against assignor payee. <u>Fischbach & Moore v. Philadelphia Nat. Bank</u>, 134 Pa.Super. 84, 3 A.2d 1011, 1012. See also: Black's Law Dictionary, 4th Ed. And see: Tex.Bus. & Com.Code 3.104, 7.501, and 7.502.
**Non Negotiable.** Not negotiable, not capable of passing title or property by indorsement or delivery. any document of title which may not be transferred by indorsement or delivery or by delivery alone, though it may be assigned. The transferee does not become a holder unless it is negotiated. Compare Negotiable. See: Black's Law Dictionary, 7th Ed. See also: Tex.Bus. & Com.Code 7.501 and 78.502.
**Non obstante.** A phrase used in documents to preclude any interpretation contrary to the stated object or purpose. See: Black's Law Dictionary, 6th Ed.
**Notice.** A warning or intimation of something, either verbal or written.
**On Demand.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 3.108.
**Organization.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 1.201(28), also refers to DEBTOR, ENS LEGIS, JURISTIC PERSON, STRAWMAN.
**Person.** See: Black's Law Dictionary, 7th Ed. Tex.Bus. & Com.Code 1.201(30).
**Proceeds.** See: Black's Law Dictionary, 6th Ed. See also: Tex.Bus. & Com.Code 9.306(a).
**Property.** In the strict legal sense, means an aggregate of rights which are guaranteed and protected by the government, and in the ordinary sense, indicates the thing itself, rather than the rights

attached to it.  See: 62 Misc.Rep. 189, 16 N.Y.S. 1000.
**Real Man.**  The real living, flesh and blood man (or woman). Refers to the Secured Party named herein and any and all derivatives thereof.  "There, evry man is independent of all laws, except those prescribed by nature.  He is not bound by any institution formed by his fellowmen without his consent."  <u>Cruden v. Neale</u>, 2 N.C. 338, 1796 N.C.Lexis 51, 1 Hayw. 338.
**Registered Form.**  See: Tex.Bus. & Com.Code 8.102(a)(13).
**Remedy for Breach of Collateral.**  See: Tex.Bus. & Com.Code 2.701.
**Remedy of Indemnity.**  See: Tex Bus.& Com.Code 5.113.
**Representative.**  See: Black's Law Dictionary, 6th Ed.  See also: Tex.Bus. & Com.Code 1.201(35).
**Right to Reimbursement.**  See: Tex.Bus. & Com.Code 5.114.
**Rights Acquired to Indemnity.**  See: Tex.Bus. & Com.Code 7.504(d).
**Secondary Party.**  See: Black's Law Dictionary, 6th Ed.  See also: Tex.Bus. & Com.Code 3.102(a)(4).
**Secured Party.**  The real, living, flesh and blood man (or woman) and natural person named herein, including any and all derevitives thereof (also considered the "Creditor").  See: Black's Law Dictionary, 6th Ed.  See also: Tex. Bus. & Com.Code 9.105(a)(13).
**Securities.**  See: Black's Law Dictionary, 6th Ed.  See also: Tex.Bus. & Com.Code 8.102(a)(15), 8.103 & 8.105.
**Security Interest.**  See: Black's Law Dictionary, 6th Ed.  See also:  Tex.Bus. & Com.Code 1.201(37).
**Seller.**  See: Black's Law Dictionary, 6th Ed.  See also: Tex.Bus. & Com.Code 2.103(a)(4).
**Signature.**  See: Tex.Bus. & Com.Code 3.401.
**Signed.**  See: Tex.Bus. & Com.Code 1.201(39).
**Straw Man.**  THE ORGINIZATION named herein and any and all derivatives thereof.  See: Black's Law Dictionary, 6th Ed.  Refers to DEBTOR, ENS LEGIS, DUMMY CORPORATION, ARTIFICIAL PERSON, and JURISTIC PERSON.  See also: Tex. Bus. & Com.Code 1.201(28).
**Surety.**  See: Black's Law Dictionary, 6th Ed.  See also: Tex.Bus. & Com.Code 1.201(40).
**Transferable.**  A term used in a quasi legal sense to indicate that the character of assignabililty or negotiablility attaches to the particular instrument or that it may pass from hand to hand carrying all rights of the original holder.  The words "not transferable" are sometimes printed upon a ticket, receipt, or bill of lading to show that the same will not be good in the hands of any person other than the one to whom first issued.  See: Black's Law Dictionary, 6th Ed.  See also: Tex.Bus. & Com.Code 3.201.
**Value.**  See: Black's Law Dictionary 6th Ed.  See also: Tex.Bus. & Com.Code 1.201(44) and 3.303.